(15 Misc. Rep. 143.)

### NICOLL v. NEW YORK BOAT–OAR CO.

(Common Pleas of New York City and County, General Term.    December 27, 1895.)

CONTRACTS—PERFORMANCE.

A contract to publish an advertisement in a trade catalogue for 1893–94 is not fulfilled by publication in a catalogue bearing a different name than that represented, and not published until January, 1895.

Appeal from First district court.

Action by Charles N. Nicoll against the New York Boat-Oar Company.    Judgment was rendered in favor of plaintiff, and defendant appeals.    Reversed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

Elmer A. Allen and John E. Eustis, for appellant.
William C. Timm, for respondent.

BOOKSTAVER, J.    This action was brought by the plaintiff, as assignee of Power & Co., to recover on the following contract:

"G. Amsinck & Co.'s Catalogue.

"An Illustrated Catalogue of the Best Products of American Manufactories, for the Use of All Merchants and Traders in the Spanish Countries of the World, Most of Whom are Customers of the Above Firm, the Largest Commission House in Existence.

"   'New York, Sept. 18, 1893.

"   'Power & Company, corporation, is hereby authorized to insert our advertisement in G. Amsinck & Co.'s Catalogue for 1893–1894, to occupy the space of one page, for which we agree to pay one hundred and twenty-five dollars, payable on publication, not prior to Feby. 1, 1894,. to the order of Power & Company.        F. D. Wilsey, Pres. New York Boat-Oar Co.'

"The publishers will not be responsible for any conditions not expressed in this contract."

No catalogue of any kind was published until the month of January, 1895, when a book entitled "Catalogo Illustrado de las Mejores Producciones de Fabricas Americanas" was issued, bearing the imprint of Power & Co., and the cover also bore the same title. One thousand copies of this catalogue were delivered to the firm of G. Amsinck & Co., containing an advertisement of the defendant's business; and it is claimed by the plaintiff that this was a compliance with the terms of the contract, and entitled him to recover the contract price of the advertisement in question.    This the defendant denied.    The phrase, "G. Amsinck & Co.'s Catalogue," means either a catalogue owned by G. Amsinck & Co., or one gotten up under their direction and supervision, or a book published by them.    But the book in question does not satisfy any of these meanings.    The name of that firm does not appear, in the title page or elsewhere, as the owner, publisher, or supervisor of the work.    Neither did the facts developed on the trial show

that it was owned, gotten up, or supervised by them. On the contrary, it was clearly shown that it was Power & Co.'s catalogue, and was gotten up and published by that company. The mere fact that G. Amsinck & Co. received from Power & Co. 1,000 copies of the book, which they distributed among their customers, did not make it their catalogue. No one would think of calling Trow's Directory "John Smith's Directory," although Smith had subscribed for 1,000 copies thereof.

But there is still another reason why there should have been no recovery in this action. By the terms of the contract, it was to have been a catalogue for 1893–1894, i. e. for the season of 1893–1894; but it was not issued until January, 1895, and hence was entirely too late for the season contemplated. Plaintiff's contention that the delay was caused by the failure of advertisers to send in their advertisements in due season cannot avail him, for this was one of the risks the company assumed when it undertook to get out the catalogue for the season fixed, and the defendant cannot be held responsible for the failure of others. It would be responsible only for its own failure, and in this respect it was nowise in fault. It was not asked for copy until October 4, 1894, when it replied that it had no copy to send, and canceled the order theretofore given, saying, among other things:

"We did give a contract on September 18, 1893, but as it has not been carried out, and fully 18 months have elapsed since then, it is too late to be of any use; and we have been frequently advised that this is not Messrs. G. Amsinck's catalogue, at all, and have been shown letters in reference to this from Mr. Amsinck's own people,—that they have nothing to do with it. * * *"

And we think the defendant was fully justified in taking the position it did, under the facts in the case, and considering the time which had elapsed from the giving of the order. We therefore think the judgment should be reversed, with costs to the appellant.